CHARLES SCHUNIOR ET AL V. JOHN C. RUSSELL.

No. 2926.

1. **Depositions—Failure to take Testimony of all Named in Commission.**—That the officer taking depositions did not take the depositions of one or more witnesses named in the commission, and gave no reason for such omission, is not a valid reason for suppressing the depositions of the witnesses taken by him.

2. **Same.** — It may be that where the interrogatories have been crossed, and the cross-interrogatories by the other party are such as to make the witness his own, he may have such interest in the commission as would entitle him to have the omitted depositions taken on his own account; and the failure of the officer to execute the commission as to all the witnesses might give him the right to ask a continuance for time to procure the depositions of the witnesses so omitted.

3. **Consular Agent—Seal of Office.**—Depositions were taken in Mexico by an officer styling himself "Consular Agent of the United States at Camargo, Mexico." His certificate was authenticated by a seal which contained the words, "United States Commercial Agency." *Held*, that it will be presumed that the seal used was that of his office.

4. **Consul and Commercial Agent.**—It seems that a *consul* and a *commercial agent* are invested with the same powers and duties; that though nominally different, the office of each is substantially the same as that of the other, and that the name is determined by the relative importance of the post to which the officer is assigned. See discussion of United States statutes on subject, and definitions.

5. **Taking Depositions when Interpreter is Needed.**—The witnesses did not understand the English language. The officer did, but desired aid in writing in English the answers. An attorney for the party propounding the interrogatories was present who understood the language of the witnesses as well as English. The officer was aided by the attorney, who interpreted the questions to the witnesses and wrote down in English their answers. The officer controlled the work and verified the answers. It was conceded that the answers were correctly taken. *Held*, that the fact that the attorney was not sworn as interpreter did not vitiate the depositions.

6. **Attorney Writing Answers of Witnesses.**—It is a gross irregularity for an attorney to write the answers of witnesses whose testimony is being taken in behalf of his client, for which a deposition as a rule should be suppressed. But where the facts repel every inference of fraud and show that no possible actual injury has occurred to the adverse party from the manner the depositions were taken, it is not error to refuse a motion to suppress the depositions on that ground. See facts.

7. **Order of Survey—Surveyor's Report.**—Where a surveyor's report made under an order for survey contains objectionable matter, such parts should be stricken from the report without prejudice to such parts as are properly made under the order.

8. **Duty of Surveyor under Order of Survey.**—We think it clear that it was not intended by the statute (Rev. Stats., art. 4800) that a surveyor appointed in pursuance of it should be empowered to determine any question of fact, or to gather up and report evidence for the guidance of the court or jury. His duty is to go upon the land he is required to survey with a copy of the field notes by which he is to be guided, to search for and survey its lines and corners, and to report to the court the result of his work; that is to say, to report such natural and artificial objects as indicate the true location of the lines as he may have found upon the ground, and the correct distance of such. When no such objects can be found, then he should so report.

9. **Same—Fact Case.**—See report of survey held obnoxious to such objections, reporting testimony, opinions, etc.

10. **Same.**—A surveyor's report based upon a modern survey of an old grant and made up of arguments and conclusions upon such evidence as was accessible to him as to the true location of the lines of the surveys in question, was properly suppressed.

11. **Opinion as to Work of Surveyor.**—As a circumstance, it was competent to prove by an expert surveyor the character of the work of the surveyor whose work is in litigation. The witness testified that the work of the old surveyor was generally good.

12. **Examined Copy of Ancient Instrument.**—A grant of date 1835 was in possession of one of the heirs of the grantee. The heir had resided upon the land for three years. The holder of the title would not permit its being taken to another county where it was wanted in evidence. Affidavit was made of these facts, and an examined copy of the title was offered and admitted. No proof was made of its execution. The trial was in 1890. *Held*, error. We have found no case in which it has been held that an examined copy of an instrument can be admitted without proof of the execution, however old it may purport to be.

13. **Ancient Instrument — Secondary Evidence.** — It being out of the power of the party to produce the original, and the instrument being so old as to render direct evidence of its execution improbable, we are of opinion he should be permitted to show its execution by circumstances—such as long possession under it, payment of taxes upon the land, marks of age upon the paper itself, etc. But the copy should be supported by stronger corroborating evidence than if the original was offered.

14. **Charge—Bearing Tree as Evidence of Survey.**—The court charged the jury that "a well known tree standing alone in a prairie and marked and called for in an original survey is a natural object, and when called for upon a line it is a locative call and should control calls for course and distance." There being testimony to such a marked tree, the charge was properly given.

15. **Charge—Definitions Refused.**—The court properly refused the instruction "that the word *by*, or the term *passing by*, when descriptively used in a grant does not mean *in immediate contact with* but means *near* to the object to which it relates; and you are further instructed that the term *near* is a relative term meaning when used in land grants very unequal and different distances." The words doubtless were well understood by the jury.

16. **Charge—Improper in Giving Undue Prominence to a Fact.**—Defendant requested an instruction, "that one of the questions in the case being the true location of the division line between the 'Perdido' and 'La Blanca' tracts of land, and it appearing that said line's north end is at a corner stone called 'El Coyote,' on the south boundary line of the 'Encantada' grant, therefore said Coyote corner if the same can be located from the evidence would be the starting point from north to south of said division line." This was properly refused. It was calculated to give undue importance to one call in the grant over others of equal dignity.

17. **Acquiescence—Charge.**—Acquiescence of the plaintiff in the boundary line claimed by the defendant under circumstances not amounting to an estoppel was a mere fact to be considered by the jury in determining the question of boundary. The court therefore properly refused a charge asked by defendant calling attention of the jury to the evidence of possession, etc., and instructing "that long acquiescence by adjacent owners of a common boundary line affords a presumption that said line so acquiesced in is the true boundary line."

APPEAL from Nueces. Tried below before Hon. G. R. SCOTT, Special District Judge.

The opinion, in connection with head notes 15, 16, and 17, gives a statement.

*Nicholson & Dodd,* for appellants.— 1. The certificate of the officer who took the depositions of the four persons whose depositions were returned into court should have shown who, of all the persons named in the commission, appeared before him, and the names, if any, of those who did not appear, and why they did not appear; or if they did appear, why he did not take their depositions; or if they did not appear, his certificate should have shown what steps, if any, he took to bring them before him in order to take their depositions. Weeks on Law of Dep., sec. 328.

2. A seal, with the words "United States Commercial Agency" inscribed thereon, when imprinted on the certificate of Julian Lacaz, who signs himself as "Consular Agent of the United States of America at Camargo, Mexico," is not sufficient to authenticate or give validity to what otherwise purports to be the official act of said consular agent. Rev. Stats., art. 226, sec. 3; U. S. Rev. Stats., secs. 1674, 1748, 1749.

3. The record disclosing the fact that the depositions of the witnesses named were given in the Spanish language, and that H. F. Hord, who interpreted the interrogatories from English into Spanish, and the answers from Spanish into English, was not sworn, the motion to quash should have been sustained. The State v. Cardinas, 47 Texas, 291; Weeks on Law of Dep., secs. 300, 318, 319.

4. It is contrary to law for the party in whose favor a deposition is to be read to be present at the taking of said depositions, either in person or by attorney, to supervise or superintend the taking of the same, or to act as interpreter. Parker v. Chancellor, 73 Texas, 479; Weeks on Law of Depositions, secs. 311, 417.

5. When the return of a survey under an order of court shows that the surveyor has not complied with the order of court, and proceeds upon wrong premises, seeking to make actual surveys yield to the ideas of the surveyor as to where they should have been made, it should be set aside on motion. Bolton v. Lann, 16 Texas, 110.

6. A surveyor in making report of a survey made under an order of court should not be allowed any greater latitude in arguing his views of the question at issue to the jury, or in making statements based on "hearsay," or in giving his views of the case on any point, than if personally present as witness on the stand and subject to cross-examination.

7. The only question at issue in this case being as to where Canales actually surveyed the division line between the Perdido and La Blanca grants of land, it was immaterial and contrary to law to ask the witness as to the general character of Canales' work as surveyor. 1 Greenl. on Ev., 13 ed., sec. 440.

8. A practical surveyor may express his opinion whether marks on trees, piles of stones, etc., were intended as monuments of boundaries,

but he can not be asked whether, in his opinion, the work of another surveyor was good and correct work.

9.    In questions of boundary, field notes and descriptions of adjoining surveys are not admissible in evidence except in cases where the lines in dispute are in some way dependent on the said adjoining surveys.

10.    To entitle an examined copy of an ancient instrument to admission in evidence on questions of boundary, it must appear, (1) that it is offered by a party to the suit, who holds or claims some right under the original instrument; (2) that the original instrument is lost, destroyed, or beyond the jurisdiction of the court, and out of the power of the party offering the examined copy to produce the original in court; (3) that the original and the copy are unblemished by alterations, and that there is nothing to cast suspicion upon either the original or the copy; (4) there must be some evidence corroborative of its genuineness.    Gainer v. Cotton, 49 Texas, 117, 118; Williams v. Conger, 49 Texas, 594, 596; Stroud v. Springfield, 28 Texas, 667, 668; Shinn v. Hicks, 68 Texas, 279; Holmes v. Coryell, 58 Texas, 688.

11.    Long acquiescence by adjacent owners of a common boundary line affords a presumption that said line is the true boundary line, and if there is sufficient evidence upon which to base a charge thereon it is the duty of a trial judge to present by proper instruction such phase of the case to the jury, even if not requested so to do.    George v. Thomas, 16 Texas, 86, 87; Love v. Barber, 17 Texas, 318, 319; Bolton v. Lann, 16 Texas, 112, 113; Stroud v. Springfield, 28 Texas, 666–670.

*Wells, Stayton & Kleberg*, for appellee.—1.   The failure of an officer to take the depositions of all the witnesses named in a commission, or to state why he did not do so, does not vitiate or render subject to legitimate objection the depositions of part of such witnesses properly taken and returned by the officer under the commission.

2.    A consular agent of the United States of America is subordinate to and representative of a commercial agent, and his official acts are properly certified under the seal of a commercial agency.   Rev. Stats. U. S., sec. 1674.

3.    The employment of an amanuensis to reduce to writing the answers of a witness to written interrogatories by an officer acting under a properly issued commission constitutes no ground to quash a deposition, although such amanuensis may be an attorney in the cause in which such answers are to be used, if it appear that the witnesses have not been unduly influenced, and that their answers have been correctly and fully recorded.

4.    It is not error to permit a witness to testify as to the result of his experience in the line of his occupation or profession.   1 Greenl. on Ev., sec. 440.

5.   The true location of the boundary line in dispute in this case is dependent upon adjoining surveys or grants, and it was proper to admit the introduction of such in evidence to establish or assist in establishing the true boundary.

6.   A testimonio more than thirty years old, coming from the proper custody, free from suspicion, and having been acted on by those claiming under it, proves itself and is admissible in evidence without further proof of its genuineness, as also would be an examined copy of such original, if accompanied by proof that the original could not be produced in court.   Stroud v. Springfield, 28 Texas, 667, 668; Holmes v. Coryell, 58 Texas, 688; Shinn v. Hicks, 68 Texas, 279.

7.   A well known tree standing alone in a prairie, marked and called for in an original survey is a natural object, and when called for upon a line it is a locative call and should control calls for course and distance, and is a proposition of law particularly applicable to the facts in this case.


GAINES, ASSOCIATE JUSTICE.—This was an action of trespass to try title, brought by the appellee against the appellant.   The plaintiff claimed the survey known as "El Perdido," and the defendants that known as "La Blanca," and the controversy seems to have grown out of a dispute as to the true location of the dividing line between the two surveys.   These lands were granted in 1835—La Blanca to Gil Zarate y Bayereña and El Perdido to Pedro Garcia.   In order to facilitate the trial it was agreed between the parties that the defendants had title to the La Blanca tract and that the plaintiff had title to the El Perdido, unless a certain deed through which he claimed was forged, and that except that as to the forged deed the sole issue in the case was as to the true location of the dividing line between the two surveys.

Before entering upon the trial the defendants made a motion, based upon several grounds, to suppress the depositions of four witnesses, which had been taken in behalf of the plaintiff.   The motion was overruled, and that ruling is assigned as error.   The first ground of the motion is, that one commission was issued to take the depositions not only of the four witnesses above referred to, but also of several others, and that the return of the officer who executed the commission failed to show why the depositions of the latter were not taken.   It is insisted, that because the officer only partially executed the commission and failed to show any reason for not executing it in full, what was done by him was not in accordance with his commission and the law, and should therefore be annulled by the court.   We see no good reason to maintain this contention.   It may have some support in extreme technicality, but has none in sound principles of procedure.

Why should a plaintiff who has filed interrogatories to two or more witnesses, and who has taken out a commission to take their deposi-

tions, be compelled to take all of them, if for any reason he desires not to do so? It seems to us he might as well be required to place upon the stand every witness he has summoned to attend the trial. When he has taken the testimony of one or more of the persons named in the commission, and deems that sufficient, or has ascertained that the others knew nothing material to the case, is he bound to incur the extra labor and expense of doing a futile thing? We think not. It may be, that when a defendant has filed cross-interrogatories, and especially when his interrogatories are such as to make the witness his own, he may have such an interest in the commission as would entitle him to have the depositions taken on his own behalf, and that the failure of the officer to execute the commission as to all the witnesses might give him the right to ask for time to procure their testimony; but it would not entitle him to have the depositions taken by his adversary suppressed.

The depositions in this case sought to be suppressed were taken in the city of Camargo by an officer who gave his official title as "Consular Agent of the United States at Camargo, Mexico." In authentication of his act he used a seal, which contained the words, "United States Commercial Agency." It is claimed that the seal of the United States Commercial Agency is not the seal of this officer. Section 1674 of the Revised Statutes of the United States contains this language:

"1. 'Consul-general,' 'consul,' and 'commercial agent' shall be deemed to denote full, principal, and permanent consular officers, as distinguished from subordinates and substitutes.

"2. 'Deputy consul' and 'consular agent' shall be deemed to denote consular officers subordinate to their principals, exercising powers and performing duties within the limits of their consulates or commercial agencies respectively, the former at the same ports or places, and the latter at points and places different from those at which such principals are located respectively.

"3. 'Vice-consuls' and 'vice-commercial agents' shall be deemed to denote consular officers who shall be substituted temporarily to fill the places of consuls-general, consuls, or commercial agents, when they shall be temporarily absent or relieved from duty.

"4. 'Consular officer' shall be deemed to include consul-general, consuls, commercial agents, vice-consuls, vice-commercial agents, and none others."

A consul is defined to be, "a commercial agent of a country residing in a foreign seaport, whose duty it is to support commercial intercourse of the State, and especially of the individual citizens." 3 Am. and Eng. Encyc. of Law, 764. From this definition, as well as the language of the statute, we deduce these conclusions: That a consul and a commercial agent are invested with the same powers and duties; that though nominally different, the office of each is substantially the same as that of the other, and that the name is determined by the relative

importance of the port to which the officer is assigned. It is to be noted that the second subdivision of the section of the Revised Statutes of the United States hereinbefore quoted provides, that deputy consuls are subordinates who perform their duties at the same port as their principals, and that consular agents are in effect deputies who act at a place other than that at which their principals are located. In the first subdivision commercial agents are declared to be principal officers, and it is thereby indicated that they might have deputies. It would seem that if a commercial agent should be placed in charge of a number of ports or places, a deputy might be necessary at places where he could not discharge the duties of the office in person. But the Revised Statutes do not expressly mention a deputy commercial agent or the agent of that officer. The agent of a commercial agent by being called a commercial agent would not have been distinguished from his principal, and we therefore incline to the opinion that it was intended that such a deputy when acting at a place different from that of his principal was intended to be known as a consular agent. He is such in fact, and it is no misnomer. It is evident from the certificate to the depositions in this case that the officer was an agent in a commercial agency, and we infer that, under the official title of consular agent, he was acting as deputy of the commercial agent of a consular district. The seal of the United States commercial agency would indicate that such agency existed at Camargo, and it would seem that a consular agent at that point must have been subordinate to the commercial agent in charge of the district in which Camargo was situate. But at all events, it is to be presumed that the officer who took the deposition did his duty and affixed the proper seal in authentication of his acts; and from the lights before us we can not say that the seeming discrepancy between the seal and the title of the officer is sufficient to overcome that presumption. On the contrary, without the aid of the presumption, we are inclined to the opinion that we should be constrained to hold that the seal was a proper one.

But another ground upon which the motion to suppress was based is, that an attorney of the plaintiff acted as interpreter in taking the depositions. The facts in relation to that matter are, that one H. F. Hord was employed by the plaintiff to attend the taking of the depositions, and to see that they were taken according to law. He was present when the depositions were taken. The witnesses spoke Spanish, and did not understand the English language. Hord understood both languages. The officer also understood the English and Spanish languages well, but because he did not write the former with facility, he requested Hord to take down the answers of the witnesses. Hord translated the answers and wrote them down. The officer compared Hord's work, which was done in his presence and hearing, and after the

answers were written down assured the witnesses that they were correctly translated. It was admitted that Hord "made the interpretations correctly," and that he was not sworn. Our statutes give the officer authority to summons and swear an interpreter. Rev. Stats., art. 2230. When the witnesses do not understand the English language, and the officer does not understand both that language and that of the witnesses, he should undoubtedly secure an interpreter and swear him as the statute provides that interpreters shall be sworn. But if the officer be familiar with both languages, and merely make use of an interpreter in taking the deposition, supervising the work himself and seeing that it is correct, we see no reason for requiring that the oath shall be administered to such an interpreter. It is the officer's work, at last, and it is to presumed that he has done his duty and has seen that his assistant has interpreted correctly.

The fact that Hord was the attorney of the plaintiff presents a question of more difficulty. We think it improper for the officer to permit the attorney of a party to write out the deposition of the witness in any case; and in this case, the attorney having acted both as an interpreter and an amanuensis, the irregularity is more pronounced. If that had been all that had been shown with reference to the matter, the depositions should have been suppressed. But the statute does not expressly prohibit the action that was taken in this case, and therefore it can not be said that the depositions are void. It is a gross irregularity, for which a deposition as a rule should be avoided. But it here appears that the officer knowing both languages was present throughout the taking, supervised and compared the work. It reasonably appears that he knew the answers as written down were correct, and it is substantially admitted that they were correct. The facts repel every inference of fraud, and show that no possible actual injury has occurred to the defendants from the manner in which the deposition was taken. In so clear a case, we think it was not error to refuse to suppress the depositions on that ground.

Preliminary to the trial the defendants made a motion to strike out the report of one John S. Hord, a surveyor appointed by the court to make a survey of El Perdido and La Blanca grants. The motion was based, in effect, upon two grounds; first, that in making his survey the surveyor had not followed the directions given him in the order of the court; and second, that the report was argumentative, based upon hearsay, and inconsistent. There is much in the report that is objectionable; but that may have been stricken out without destroying the instrument itself. In such case the proper practice is to suppress the objectionable parts, and not to reject the whole report. We think also that the report shows that the surveyor, in making the survey, attempted to ascertain the lines of the two grants as actually run by the

surveyor who made the original surveys, and that therefore he did his work presumably to the best of his ability in accordance with the order of the court which directed the survey to be made. We conclude, therefore, that the court ruled correctly in refusing to strike out the whole report.

But in their motion the defendants also requested the court to strike out specific portions of the report, and this part of the motion was also overruled. The portions so objected to are as follows:

1.  "I have carefully examined the original grants by the State of Tamaulipas, containing original surveys by Lic. Antonio Canales, to the following surveys: El Perdido, Alameda, Encino del Poso, and Encantada. I have examined in the Starr County records the record of the La Blanca grants and survey by Canales, and have also had for my information and guidance certified copies of the Rucia, Vargas, and Santa Quiteria surveys, and also survey and field notes of surveys made by Isaguirre, Blucher, Cock, Prandy, and others, and have carefully and accurately located every natural and artificial landmark referred to in said previous surveys.

2.  "All of the above surveys made by Canales were contemporaneous, and I find that he invariably certifies to having corrected the magnetic variation of his needle and having made rectangular surveys. Isaguirre (Carvajal), Salinas, Prandy, and others, on the contrary, in surveying the La Blanca and Perdido tracts, ran lines partly magnetic and partly between the true and magnetic, while no Spanish or Mexican surveyor was ever known to do so in making original surveys in unlocated lands.

3.  "These three stones [the stones marked G H J, as found in exhibit B] are recognized by owner in adjoining tracts as corner stones, and, agreeing as they do so nearly with the original calls, both as to course and distance, have evidently not been tampered with.

4.  "The tree [referring to a tree known as Encino del Poso] has old marks almost obliterated on its south side. It has been dead apparently for years, but its roots are still firmly imbedded in the land. It stands alone on the prairie in a large hole from which it derives its name, and is the largest tree and best known landmark in all that section. Canales' plat and field notes, both of La Blanca and Encantada (Encino del Poso), show it to be a line tree between the two tracts.

5.  "Isaguirre (Carvajal) in endeavoring to resurvey La Alameda, states that he began at the southeast corner M, at a post and rock planted [sic] in prairie, and ran north 6 degrees 59 minutes east 8098 varas to G. As a matter of fact, a line running from M would require a departure from the true meridian of over 9 degrees to the east to connect with the stone at G (red), at G (blue) over 500 varas to the west. The stones G, H, and J he similarly misplaces at H, J, and

G (blue).    He then runs for west line of La Alameda and east line of
Encino del Poso from J (blue) to F (red), passing several hundred
yards to the west of a live oak at R, called Encino del Poso, a most un-
accountable oversight, as the tree is called for in the original grants
of both Encino del Poso (Encantada) and La Alameda as a line tree
between them, and is so placed on the maps by Canales, and is a most
notable and well known landmark.    It is therefore apparent that,
whichever corner of Isaguirre's survey may be taken as a starting
point, it would be a mathematical impossibility, using his courses and
distances, to connect with any other corner stone in its true location
on the ground, and if the Encino del Poso tree be taken as a starting
point and Isaguirre's courses followed out, not a single line will be
found where located by him.    The plat in the Alameda grant shows
Tio Guerritas Motts (marked U) to be a considerable distance within
the tract, whereas Isaguirre's survey places them on the eastern edge.
On plat marked exhibit B will be found Isaguirre's attempted resurvey
of La Alameda and La Blanca tracts (traced blue), and I have been
thus particular in demonstrating how Isaguirre laid off these two tracts,
for the reason that the La Blanca, with the bite G H J at its northeast
corner, and Encino del Poso tree (R) on its western boundary line,
must be the guide in determining all the boundary lines and corners
of adjoining tracts, and when Isaguirre resurveyed La Alameda he
planted a stone at M 1519 varas west of a true south line from G, using
that as a starting point.    He failed to connect with the stones G H
J, and totally ignored the Encino del Poso tree at R as a line tree.
Subsequently he resurveyed La Blanca, making its north line conform
to the south line of his erroneous survey of La Alameda, and this gave
rise to all disputes as to the true boundary line between El Perdido
and La Blanca grants.    Hesse, Prandy, and others have made surveys
of La Blanca in accordance with Isaguirre's field notes, while Blucher
and Cock have endeavored to follow in the footsteps of Canales in the
original survey.    La Encantada and Encino del Poso have together,
as granted, a distances of 18,000 varas (360 cordeles) on their southern
boundary.    From two stones at A to stones at H there is a shortage of
1443 varas, and if that be taken as a southeast corner of Encino del
Poso to conform to Isaguirre's survey of La Alameda, it would fall
short several thousand acres.    From A to L there is an excess of but
158 varas, making a surplus, it is true, in Encino del Poso tract, but
only about one-eighth of what the shortage would be if F, and not L, be
considered as the southeast corner of Encino del Poso.    Furthermore,
the Luseta Quiteria has been surveyed with its western line at G N O,
and the distance from F to N is correct according to the La Blanca
grant, and gives that tract and La Alameda their full quantity.    In
view of all these facts, I have adopted the line run by Blucher between
the Perdido and La Blanca tracts as their true boundary division line.

This line is a true north and south line F to S, crossing La Blanca line A T."

Each of the foregoing parts of the report as separately numbered was specifically excepted to in the motion, and the court was asked to strike it out. We are of the opinion that, with one exception, so much of the report as was specially excepted to should have been suppressed.

The provisions of our statute in reference to a survey and report made under an order of court in actions of trespass to try title are meager. It merely empowers the judge, either in term time or vacation, to order a survey to be made and reported under oath, and provides that the report, if it be not rejected for good cause shown, shall be admitted as evidence on the trial. Rev. Stats., art. 4800. We think it clear that it was not intended that a surveyor appointed in pursuance of this statute should be empowered to determine any question of fact, or to gather up and report evidence for the guidance of the court or jury. His simple duty is to go upon the land he is required to survey with a copy of the field notes by which he is to be guided, to search for and survey its lines and corners, and to report to the court the result of his work—that is to say, to report such natural and artificial objects as indicate the true location of the lines and corners as he may have found upon the ground, and the course and distance of such. When no such objects can be found, then he should so report. To enable him to find the lines and corners he may seek his information from any source he may see proper, but such information, if derived from documents other than those by which the court directs him to make that survey, is secondary; and if from witnesses, is hearsay; and in either event should have no place in the report.

The facts stated in that part of the report first specially excepted to were wholly irrelevant to any issue before the court, and should have been stricken out. What documents he may have examined in seeking information to enable him to find the lines and corners was unimportant, and served only to incumber the report.

The facts stated in the second part of the report excepted to may have been pertinent if proved by competent evidence; but they could not be proved by a surveyor's report.

In regard to the third portion, it is sufficient to say that the person who recognized the stones should have been called to testify to the fact, if relevant. It was not competent for the surveyor to make the fact of his recognition a part of his report.

The portion of the report numbered 5, as above, consists of statements of facts which, if evidence at all, should have been shown by the documents referred to and by witnesses, as well as of arguments and inferences from the facts stated. Upon the principles announced, it should have been stricken from the report.

The objections as to the statements with reference to the tree known as Encino del Poso were not well taken. The facts were such as may have been ascertained by a surveyor from his own inspection while making the survey, and were proper to be reported. So much, however, of that part of the report as states the contents of Canales' plats and field notes of La Blanca and the Encantada grants, were best shown by the plats and field notes themselves, and if excepted to by itself alone, should have been excluded.

The field notes of contiguous surveys are frequently most material evidence in settling a question of boundary, and we are aware that it is the practice of surveyors appointed by the court to state in their reports the contents of such field notes. They are usually well known to both parties, so that no question arises as to the facts, and the statement is permitted to stand without objection. In such cases the practice is convenient and saves unnecessary labor and expense; but it can not change the law.

In this connection we will consider appellants' first assignment of error, which is the last presented in their brief. It complains of the action of the court in rejecting a report of the survey of the land in controversy made by one Prandy, county surveyor of La Salle County, by virtue of an order of the judge. The order directed a survey of the El Perdido and La Blanca grants, in order to ascertain the true boundary line between the two tracts; appointed the surveyor of the county last named to make the surveys, and required him to "be guided by the field notes, etc., of the original surveys, and other information that may be useful and obtainable to aid said surveyor in arriving at the true location of said boundary line." The report consists, first, of the field notes of the two surveys respectively; and second, of remarks in justification of their correctness. Taking the whole report together, the field notes seem to us a mere statement of the surveyor's conclusions upon such evidence as was accessible to him as to the true location of the lines and corners of the two surveys, and not a description of the objects, natural and artificial, found upon the ground while surveying the lands according to the field notes of the original surveys, as directed by the order of the court. The reports resemble rather a referee's statement of his conclusions of facts than a detail of evidence. Moreover, it shows that instead of taking the field notes and the plats of the original surveys as his guide, he based his work upon "the field notes of a survey of La Blanca made in 1853, and approved by" one Berna, a district surveyor. This not only shows that he disregarded the order of the court, but also strengthens the conclusion that he mistook his function and did not report the evidence tending to establish the line in dispute found upon the ground while making the survey, but gave merely his opinion as to the true location

of the lines and corners of the surveys, with a description of objects by which they are to be identified. We conclude that the court correctly rejected the report.

During the course of the trial, the plaintiff asked a surveyor the following question: "From your experience in resurveying the surveys and grants originally made by Canales, state what the character of his work as such surveyor is. Is it not correct work as such surveyor? Or, in other words, in your resurveys of the grants originally surveyed by Canales, did you find his work correct upon the ground, and does the variation of the needle call for course and distance, marked natural and artificial, as called for and described by him in his original surveys and plats and field notes of said surveys?"

The question was objected to by defendant, but the objection was overruled, and the witness answered: "I find it (meaning the work of Canales) very good." We think the court did not err in its ruling. The fact that Canales' surveys were generally found correct was a circumstance tending to show that the surveys in controversy were correctly made. He made the original surveys of both grants. Whether Canales' surveys were usually correct or not could be proved by a surveyor who had resurveyed lands originally surveyed by him.

Upon the trial the plaintiff was permitted to read in evidence, over the objection of defendant, an examined copy of the original grant to one Pelar Zarate of a survey adjoining La Blanca, known as the Alameda grant. The original was proved to be in the possession of Juan Zarate, who lived in a county different from that in which the case was tried, and who had refused to surrender possession to the plaintiff. Plaintiff made affidavit that he could not procure the original. No proof was offered to show the execution of the original instrument; but the plaintiff claimed that the copy should be admitted without proof, because the original was an ancient instrument. It was shown that Juan Zarate was in possession, holding the land as one of the heirs of the grantee, and that he had been residing there for three years. Whether he had resided upon it for a longer period or not did not appear. The grant, as shown by the examined copy, was dated in 1835, but no other evidence was introduced tending to show its age or authenticity. We have found no case in which it has been ruled that an examined copy of an instrument can be admitted in evidence without proof of the execution of the original, however old the instrument may purport to be. When a deed has been duly recorded over thirty years, and the original has been lost, a certified copy has been admitted without proof of the original; but this was by force of the statute. Holmes v. Coryell, 58 Texas, 688.

We are of the opinion that the evidence was not sufficient to authorize the admission of the examined copy in this case. It being out of

the power of the plaintiff to produce the original, and the instrument being so old as to render direct evidence of its execution improbable, we are of the opinion that he should be permitted to show its execution by circumstances. Long possession under it, the payment of taxes upon the land, the marks of age upon the paper itself, are all circumstances which might be looked to. Indeed, we think it possible to make a case under which the copy would be admissible as the copy of an ancient instrument, but certainly it should require much stronger corroborating proof than when the original is produced before the court, bearing the appearance of age and authenticity upon its face. If the document in question be genuine, some better evidence of its authenticity can certainly be produced. Juan Zarate, it would seem, should know the facts bearing most nearly upon the question of its genuineness, and his testimony should be procured.

There was no error in giving the charge complained of in the nineteenth assignment of error. It is correct as a matter of law, and was applicable to the facts of the case. Nor do we think the court erred in refusing the charge set out in the same assignment. The words the court was asked to construe required no construction. They were doubtless well understood by the jury.

The charge the refusal of which is complained of in the twentieth assignment of error, was calculated to give undue importance to one call in the grant over others of equal dignity, and was therefore misleading. Neither, in our opinion, did the court err in refusing to give the special charge set out in appellants' twenty-first assignment of error. Acquiescence of the plaintiff in the boundary line claimed by defendants (if he did so acquiesce) under circumstances not amounting to an estoppel, was a mere fact to be considered by the jury in determining the question of boundary. Its weight was a matter to be argued by counsel for the defendants; but it was not the duty of the court to aid their argument. The evidence bearing upon the question having been admitted, the jury doubtless knew they were at liberty to consider it.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered January 22, 1892.