BUNDICK et al. v. MOORE–CORTES CANAL CO. (No. 5479.)†

(Court of Civil Appeals of Texas. San Antonio. May 19, 1915. On Motion for Rehearing, June 23, 1915.)

1. INSANE PERSONS ⬥94—DEFENDANT OF UNSOUND MIND—FAILURE TO APPOINT GUARDIAN.

Where one defendant, in an action of trespass to try title, is a person of unsound mind, the fact that no guardian of her estate or guardian ad litem has been appointed does not render void a judgment for plaintiff.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 164, 165; Dec. Dig. ⬥94.]

2. INSANE PERSONS ⬥94—INCOMPETENT DEFENDANT — CROSS-ACTION — GUARDIAN AD LITEM.

That no guardian ad litem was appointed for a defendant of unsound mind did not require a reversal of a judgment for plaintiff, in an action of trespass to try title, where a cross-action was brought by such defendant "represented by her husband," and it appeared that there was no guardian of her person, and that his interests were not adverse to hers, and no objection was made before judgment that she was not properly represented, especially where it appeared that the husband was appointed guardian of her estate before the cross-action was filed, and that, at the time of the trial, she had been fully restored to mental vigor; Rev. St. 1911, art. 1942, authorizing the appointment of a guardian ad litem for a defendant non compos mentis, not prohibiting the bringing of a cross-action by such a person by another, as next friend, where there is no guardian.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 164, 165; Dec. Dig. ⬥94.]

3. APPEAL AND ERROR ⬥544—PRESENTATION —BILLS OF EXCEPTIONS—REFUSAL OF INSTRUCTIONS.

Assignments of error complaining of the refusal of instructions could not be considered on appeal, where the record did not contain any bills of exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2412-2415, 2417-2420, 2422-2426, 2428, 2478, 2479; Dec. Dig. ⬥544.]

4. JUDGMENT ⬥251—TRESPASS TO TRY TITLE—DESCRIPTION IN JUDGMENT—PLEADINGS.

That the description in a judgment for plaintiff in an action of trespass to try title, did not conform to that contained in plaintiff's pleadings, did not require a reversal, where defendants, by a cross-action, put in controversy the title to additional land and the court decreed that defendants take nothing in their cross-action; the legal effect of a judgment in such an action that a defendant take nothing by his cross-action being the same as an affirmative award to plaintiff.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 437; Dec. Dig. ⬥251.]

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

5. JUDGMENT ⬅⬆256 — CONFORMITY WITH VERDICT—DESCRIPTION OF LAND.

A judgment, in an action of trespass to try title, will not be reversed on the ground that it is not supported by the verdict, though, if resort be had to the metes and bounds alone, it appears that it awards plaintiff more land than the verdict calls for, where it appears that defendants, as well as plaintiff, were attempting to put in controversy the title to the land described in the judgment but that both made a mistake in stating the length of a line.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 446–454; Dec. Dig. ⬅⬆256.]

6. COSTS ⬅⬆32—TAXATION—PERSONS LIABLE —TRESPASS TO TRY TITLE.

Where plaintiff, in an action of trespass to try title, recovered a large part of the land sued for by it, to which defendants did not disclaim, and defendants recovered no part of the land sued for by them additional to that sued for by plaintiff, the costs were properly taxed against defendants, though they recovered a portion of the land for which they sued.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 108–132; Dec. Dig. ⬅⬆32.]

7. ADVERSE POSSESSION ⬅⬆115—DIRECTION OF VERDICT—EVIDENCE.

Where, in an action of trespass to try title, the evidence failed to show any use made by defendants of 132 acres of the land in controversy, to which defendants claimed title by limitation, or to show that such portion of the land was inclosed for ten years prior to commencement of the suit, it was not error to direct a verdict for plaintiff as to such portion.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 314, 691–701; Dec. Dig. ⬅⬆115.]

8. BOUNDARIES ⬅⬆40—LOCATION OF BOUNDARY LINE—SUBMISSION OF ISSUES—EVIDENCE.

Where the evidence, in an action of trespass to try title, conclusively showed the true location of a boundary line in dispute, failure to submit to the jury the issue of the location of such line was not error.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 196–204; Dec. Dig. ⬅⬆40.]

9. ADVERSE POSSESSION ⬅⬆96 — NOTICE OF CLAIM—INCLOSURE.

Possession of a few acres inclosed with a fence did not give notice to the owners of a large tract of land included in a pasture, containing about 17,000 acres, that the person in possession of the inclosure claimed title to 640 acres, where there was nothing to show the extent of his claim.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 533–536; Dec. Dig. ⬅⬆96.]

On Motion for Rehearing.

10. BOUNDARIES ⬅⬆37—LOCATION—ACQUIESCENCE—SUFFICIENCY OF EVIDENCE.

Evidence, in an action of trespass to try title, held insufficient to show that those under whom plaintiff claimed had recognized the true location of the boundary line as being the location contended for by defendants.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. ⬅⬆37.]

11. BOUNDARIES ⬅⬆40—DETERMINATION OF LOCATION—ACQUIESCENCE.

Acquiescence under circumstances not amounting to an estoppel is a mere fact to be considered by the jury in determining the true location of a boundary line.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 196–204; Dec. Dig. ⬅⬆40.]

12. BOUNDARIES ⬅⬆37—LOCATION—PROOF OF ACQUIESCENCE—PROBATIVE EFFECT.

Where the location of a boundary line is doubtful, acquiescence under circumstances not amounting to an estoppel is entitled to great weight; but, where the evidence leaves no room for doubt as to the true location, proof of acquiescence in the erroneous line will not support a verdict in favor thereof.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. ⬅⬆37.]

13. BOUNDARIES ⬅⬆3—DESCRIPTION OF LAND —JUDGMENT—CONSTRUCTION.

Where a description of land in a judgment, in an action of trespass to try title, calls for a well-described corner at variance with the distance, the distance must give way to the call for the corner.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. ⬅⬆3.]

Appeal from District Court, Matagorda County; Samuel J. Styles, Judge.

Action by the Moore-Cortes Canal Company against O. C. Bundick and others. From a judgment for plaintiff, defendants appeal. Affirmed, and rehearing denied.

Gaines & Corbett, of Bay City, and G. G. Kelley, of Wharton, for appellants. Wilson Dabney & King, of Houston, and Krause & Wilson, of Bay City, for appellee.

MOURSUND, J. On July 5, 1911, the Moore-Cortes Canal Company filed its original petition in trespass to try title, seeking to recover two certain tracts of land from O. C. Bundick, Peter B. Bundick, Mrs. Clementine Bundick (a widow), Mrs. Matilda Ryman and her husband, Philip Ryman, C. T. Freeman, J. H. Freeman, E. T. Freeman, Jeff Bundick, and H. M. Bundick, individually and also in his capacities as guardian of Jeff Bundick and administrator of the estate of Theo W. Bundick, and suing as warrantors W. C. Moore, A. P. Borden, and Mrs. Mamie P. Withers, executors of the estate of A. H. Pierce, and Mrs. Mamie P. Withers in her individual right. The two tracts of land were described as containing, respectively, 577 and 63 acres, both out of a certain grant in Matagorda county made by the Mexican government to Abraham Bowman and Chas. Reese, on June 20, 1831, and both tracts were described by metes and bounds with reference to objects situated upon the ground. The metes and bounds given for the 577-acre tract are as follow:

"Commencing at a point on the dividing line between the lower or third Harrison quarter league grant and the Bowman and Reese grant, which is distant 1,444 feet, more or less, west from the common corner on the Colorado river of said Harrison and Bowman and Reese grants, being the point where a fence from the south intersects said dividing line; thence west with the dividing line between the lower Harrison quarter league and the Bowman and Reese grant, and with a partition fence constructed along said division line 8,881 feet, more or less, to a point where said division fence between the Bowman and Reese grant and the Harrison grant is intersected from the south by a fence built by the Moore-Cortes Canal Company to inclose its pasture on the Bowman

and Reese league; thence in a south or southerly direction with the line of said pasture fence 2,700 feet, more or less, to point where said pasture fence is intersected by an east and west fence built in 1911 by H. M. Bundick and others; thence in an east or easterly direction, and with said fence built by Bundick et al. 10,325 feet, more or less, to the Colorado river; thence up the Colorado river with the meanders of same to a point where the river is intersected by the southernmost line of a survey of 63 acres out of the northeast part of the Bowman and Reese league; thence with an old fence line south 67 degrees west 1,987 feet, more or less, and in about the same direction with fence 378 feet additional to corner; thence north 20 degrees west with fence 356 feet more or less, to corner; thence north 66 degrees east with fence 350 feet, more or less, to corner; thence north 13 degrees west with fence 625 feet, more or less, to corner; thence with fence east 125 feet, more or less, to corner; thence north with fence 800, feet, more or less, to point on the dividing line between lower Harrison quarter league and Bowman and Reese grant, the place of beginning—said tract containing 577 acres of land, more or less, and being all of 640 acres, more or less, surveyed out of northeast part of Bowman and Reese league, after deducting therefrom a survey of 63 acres in the extreme northeast corner thereof."

The 63-acre tract was described as follows:

"Commencing at the southeast corner on the Colorado river of the lower or third Harrison quarter league grant, which is also the northeast corner of the Bowman and Reese grant; thence west with the dividing line between the lower Harrison quarter league and the Bowman and Reese grant 1,444 feet, more or less, to a point where a fence running north and south intersects said dividing line; thence south with said fence 800 feet, more or less, to corner; thence west with another fence 125 feet, more or less, to corner; thence south 13 degrees east with another fence 625 feet, more or less, to corner; thence south 66 degrees west with fence line 350 feet, more or less, to corner; thence south 20 degrees east with fence line 356 feet, more or less, to corner; thence north 67 degrees east with fence line 378 feet, more or less, to a point; and thence in same general direction with old fence line 1,988 feet, more or less, to Colorado river; thence up said river with the meanders thereof to the place of beginning—said tract containing 63 acres, more or less, and being surveyed out of the extreme northeast part of the Bowman and Reese grant."

Plaintiff, in addition to the formal allegations in trespass to try title, pleaded that it had title to said lands by the three, five, and ten years statutes of limitation. Plaintiff alleged that the defendant Mrs. Matilda Ryman had been adjudged a person of unsound mind, but that no guardian of her estate had been appointed. Plaintiff sequestrated the 577-acre tract.

The defendant warrantors filed an amended answer, adopting the allegations of plaintiff's petition, except as to the action over against the warrantors.

The other defendants went to trial upon an amended answer and cross-action. In this answer they denied plaintiff's allegations, pleaded not guilty, pleaded the statutes of limitation of three, five, and ten years, alleging that their possession extended from the year 1848 down to the date the suit was instituted. They also pleaded that the plaintiff is estopped from asserting or claiming that the south line of the lower Harrison quarter is not located at the point of defendants' contention, rather than at the point of plaintiff's contention, for the reason that the beginning corner claimed by the defendants Bundick was designated by the surveyor Alexander at the time the defendants Bundick took possession and was pointed out in 1852 by said surveyor as the south line of the lower Harrison quarter, which is admitted to be owned by the Bundicks, and that the plaintiff and those whose estate it holds and claims recognized and acquiesced in said line as the true south line of the lower Harrison quarter and the north line of the Bowman and Reese league for more than half a century, and that such line was acted on by all parties interested in the true boundary line. In this answer the two parcels of land sued for by plaintiffs are described as one tract; the boundaries being given as follows:

"Beginning at a point on the Colorado river at a willow tree hacked and blazed; thence down the river with its meanders, but in a general course south 2 degrees west 680 varas to corner on river; thence west 4,679 varas to corner; thence north 680 varas to corner; thence east 4,679 varas to the place of beginning, containing 640 acres."

In their cross-action they sought to recover a tract of land situated in Matagorda county, described as follows:

"Being out of and a part of the Harrison quarter league, known as the Harrison lower quarter, described as follows: Beginning at a point on the Colorado river the northeast corner of the Bowman and Reese league and southeast corner of the lower Harrison quarter league; thence west 5,250 varas along said line to a point in the north line of the Bowman and Reese and southwest corner of the lower Harrison quarter; thence north 680 varas to a point in the line of the lower Harrison quarter; thence east 5,250 varas to a point on the Colorado river; thence down said river with its meanders to the place of beginning, comprising a plot of ground 680 varas in width and 5,250 varas long, upon which the Bundick homestead is situated—said beginning corner being the corner pointed out and identified by —— Alexander as the southeast corner of the Harrison lower quarter league."

They alleged that 63 acres of the land so described was the 63-acre tract described in plaintiffs' petition; that 577 acres was the tract described in paragraph 2 of plaintiffs' petition; and that the remainder thereof lies immediately west of the said 577-acre tract. Defendants' cross-action, in addition to formal allegations in trespass to try title, contained allegations asserting title by virtue of the three, five, and ten years statutes of limitation. They alleged further that the writ of sequestration was wrongfully issued, and claimed damages therefor, and prayed for the recovery of the 640 acres of land sued for by plaintiffs.

Plaintiff filed an answer to defendants' cross-action; said answer consisting of a plea of not guilty and pleas of three, five, and ten years limitation.

A jury was impaneled on June 12, 1914,

and, after the conclusion of the testimony and argument of counsel, the trial judge instructed the jury to return a verdict in favor of the plaintiff, Moore-Cortes Canal Company, and against defendants Bundick, for all land in controversy, except the 63 acres inclosing the Bundick residence and 14.7 acres west of the Bundick residence, and against the warrantors in favor of the Moore-Cortes Canal Company, for the warranty money on such tract. A verdict was returned in accordance with the instructions given, and judgment entered to the effect that plaintiff recover of the defendants, other than those sued upon the warranties, a tract of land described as a part of the survey granted by the Mexican government to Abraham Bowman and Chas. K. Reese on June 20, 1881, situated in Matagorda county, on the west bank of the Colorado river, and extending from the Harrison tract or lower quarter league on the north to the Keller league on the south; the location of said survey on the ground being fixed by a certain report filed in the court by the surveyor appointed by the court, and the portion thereof awarded to plaintiff being described as follows:

"Commencing at the southeast corner on the Colorado river of the Harrison lower or third quarter of a league of land, being the northeast corner of the Bowman and Reese grant, at a willow tree hacked and blazed upon the bank of said river as said corner is surveyed and located in the deed from A. H. Pierce to W. C. Moore, of date November 28, 1900, recorded in volume 7, pages 438 et seq., of the deed records of Matagorda county, Tex., to which reference is made for description; thence west 5,300 varas, more or less, along the dividing line between the Harrison lower one-fourth league and the Bowman and Reese grant, and along the line of a division fence constructed along said line by the Moore-Cortes Canal Company, to a point in the prairie the southwest corner of said Harrison lower one-fourth league (said southwest corner of the Harrison being distant from the common north line of the Harrison upper one-fourth league and of the Etherton grant, and common south line of the Parker grant and of the Cayce grant south 3,750 varas more or less); thence south 2,700 feet, more or less, to a point in the prairie; thence east 5,250 varas, more or less, and along the line on which H. M. Bundick constructed a fence in 1911 to a point on the west bank of the Colorado river; thence up the Colorado river with its meanders to the southeast corner of the Harrison lower one-fourth league and northeast corner of the Bowman and Reese grant the point of beginning. From the above-described tract of land adjudged to the plaintiff there are excepted a tract of 63 acres of land and a tract of 14.7 acres of land which are thus described, viz.:"

It will not be necessary to set out the boundaries of the two tracts excepted, as no question arises with regard thereto. This appeal was perfected by said defendant.

[1] Appellants contend in their first assignment of error that the judgment is not a final judgment because plaintiff alleged that Mrs. Matilda Ryman was a person of unsound mind, and that no guardian of her estate had been appointed, and the record fails to disclose that a guardian ad litem was appointed to represent her. The cases cited by appellants do not hold that the failure to appoint a guardian ad litem renders the judgment void. The judgment disposes of all the parties, and is a final judgment. Wallis v. Stuart, 92 Tex. 568, 50 S. W. 567; Grogan v. Spaulding, 155 S. W. 1014.

[2] The further contention is made that the judgment is erroneous because it was rendered without appointing a guardian ad litem for Mrs. Ryman, and that the error is a fundamental one, requiring the reversal of the judgment. This contention would have to be sustained were it not for certain facts which distinguish the case from that of Taylor v. Rowland, 26 Tex. 293. In the instant case the trial was not had upon the petition and answer. Defendants filed a cross-action seeking to recover the land sued for by plaintiff, making formal allegations customary in trespass to try title cases, and asserting title by the three, five, and ten years statutes of limitation, which they had already pleaded in their answer. The cross-action was brought by Mrs. Matilda Ryman, "represented by her husband, Philip Ryman." Article 1942 applies when a person non compos mentis is a defendant, but does not prohibit the bringing of a suit by such a person as next friend, when there is no guardian. In this case Mrs. Ryman filed the cross-action through her husband, who, if the allegation be true that she had no guardian, could represent her; his interests not being adverse to hers. The trial was had and judgment rendered without any objection being made that Mrs. Ryman was not properly represented, and, when the question was raised on motion for new trial, the motion was controverted, and it was shown that after the filing of plaintiff's petition, and prior to the filing of the original answer and the amended answer and cross-action, P. H. Ryman, the husband of Matilda Ryman, was duly appointed and qualified as guardian of her estate, so that in fact the pleadings were filed on her behalf by the guardian of her estate. It was further shown that, prior to the date of the trial, Mrs. Ryman was fully restored to mental vigor, was discharged by the officials of the insane asylum as cured, and was found by the probate court to be of sound mind, and the guardianship on her estate was duly closed, and her estate delivered to her. The motion for new trial was overruled. Had a new trial been granted, or if one was now ordered, the court would have been compelled to find that he was not authorized to appoint a guardian ad litem for Mrs. Ryman, and nothing is to be gained by ordering a new trial. We conclude that, in view of the cross-action having been filed and of the facts shown upon motion for new trial, the judgment should not be set aside upon the ground urged.

[3] Assignments 2 to 10, inclusive, as numbered in brief, relate to special charges refused, and must be overruled because the rec-

ord does not contain any bills of exception. It is therefore not made to appear that the special charges were presented to the court at the proper time, and that the rulings in refusing to give the same were excepted to at the time they were made. Uvalde v. Bank, 172 S. W. 175.

[4] Assignments Nos. 11, 12, and 13 relate to the description in the judgment of the land awarded to plaintiff. It is not necessary for the description in the judgment to conform to that contained in plaintiff's pleadings, for, by their cross-action, defendants put in controversy the title to additional land; and as the legal effect of a judgment in a trespass to try title case, to the effect that the party seeking to recover land take nothing by his suit, is the same as an affirmative award to the other party, we cannot see that defendants have been prejudiced by the failure of the court to award plaintiff a recovery of the land sued for by him, describing it as in the petition, and then to decree that defendants take nothing by their suit for the land described in their cross-action.

[5] The question whether the judgment is supported by the verdict is a more serious one. If resort be had to the metes and bounds alone, it is clear that the judgment awards plaintiff more land than the verdict calls for. The plaintiff sued for a tract in the shape of a parallelogram, with dimensions 3,717 varas by 972 varas, more or less, while the defendants by their answer describe the land plaintiff sues for a parallelogram 4,679 varas by 680 varas, and in their cross-action sue for a tract 5,250 varas by 680 varas. However, they alleged that the 63 acres and 577 acres sued for by plaintiff composed part of the land sued for by them, and that the remainder so sued for by them lies immediately west of the 577-acre tract sued for by plaintiff. The call by plaintiff to run south 2,700 feet, more or less (972 varas), is limited by the fact that it is to run to a point where a certain fence with which it runs is intersected by an east and west fence built by H. M. Bundick and others in 1911. When these statements are considered, it is apparent that defendants, as well as plaintiff, were attempting to put in controversy the title to a tract of land which for south line ran along the fence erected by H. M. Bundick and others. It is evident that plaintiff or defendants made a mistake in stating the length of the north and south line. It is also evident that defendants intended to and did put in issue, by their cross-action, the title, not only to the parallelogram having its west line along the fence built by Moore-Cortes Canal Company and its south line along the fence built by H. M. Bundick, but also a parallelogram lying immediately west of said tract, the north line of which extended west from the northwest corner of the 577-acre tract described by plaintiff, to a point 5,250 varas from the river, and the west line of which was the same length as the west line of the 577-acre tract.

We conclude there is no merit in appellants' contentions in regard to the description, and overrule the assignments of error.

[6] Assignment No. 14 is without merit. The costs were properly taxed against defendants. Plaintiff recovered a large portion of the land sued for by it, to which defendants did not disclaim. Defendants recovered no part of the land sued for by them additional to that sued for by plaintiff.

[7] By the fifteenth assignment appellants contend that the charge of the court is upon the weight of the evidence in that defendants should have been allowed to recover 210 acres instead of 63 acres and 14.7 acres. The additional 132 acres is land lying between the parcels containing, respectively, 63 acres and 14.7 acres, and at one time fenced off from the other land recovered by plaintiff by a fence extending from the southeast corner of the 14.7-acre parcel to the southwest corner of the 63-acre parcel and a fence extending from the 14-acre tract north to the fence built along the division line between the Harrison survey owned by defendants and the Bowman and Reese survey owned by plaintiff. Appellants contend that they acquired title to this 132 acres by limitation of ten years. The contention must be overruled for several reasons. The evidence fails to show any use by the defendants of the 132 acres. It also fails to show that the 132 acres was inclosed for ten years prior to the institution of the suit. The suit was filed on July 5, 1911. Powell testified he constructed the fence around the lower Harrison tract about May or June in 1901 or 1902. Shaedle's testimony would support a finding that the fence was built in 1901. It is undisputed that Powell first built the fence along the north line of the lower Harrison survey, then the west line, and then the south line. His testimony does not show when he completed the fencing of the Harrison survey. About six weeks after building said fence, he erected the fence down to the 14-acre tract and the fence from the 14-acre tract east to the 63-acre tract, thus inclosing the 132 acres. This evidence fails to show that the 132-acre tract was inclosed by July 5, 1901. The evidence of Furber, in rebuttal, to the effect that the fence extending from the south line of the Harrison lower quarter league to the 14-acre tract was down, and was not kept up, because the 132 acres, as well as the other land, was leased to Cornelius, by plaintiff, is undisputed, and therefore it is not even shown that possession of the 132 acres was maintained by defendants from the time it was inclosed until the suit was filed. The assignment is overruled.

[8] By the sixteenth assignment complaint is made of the giving of a peremptory instruction. Various contentions are made in this assignment. The first is that the testimony with regard to the location of the true boundary line between the Bowman and Reese league owned by plaintiff and the lower Har-

rison quarter league owned by defendants was so conflicting as to require that the issue be submitted to the jury. There were three surveys of a quarter of a league, each granted to Henry Harrison, of which defendants had owned the lower one. The middle one is owned by plaintiff. Each of these surveys, according to its field notes, is 1,250 varas wide, but the defendants contend that the lower should be given a width of about 680 varas more than either of the other two Harrison surveys. Plaintiffs contend that the 680 varas is a portion of the Bowman and Reese league owned by them and situated immediately south of the lower Harrison survey. The statement of facts contains 400 pages, and it would take too much space to discuss the testimony. We content ourselves with making the conclusion of fact that the evidence conclusively shows that the land in controversy is a part of the Bowman and Reese league, and therefore the court did not err in failing to submit to the jury the issue as to the true location of the line between the Bowman and Reese survey and the lower Harrison survey. Appellants in their argument state that, if the title depended only on the question whether the land lies within the Bowman and Reese league or within the Harrison lower quarter, it might not have been necessary to have submitted the question of boundary line, but contend that the question of limitation should have been submitted. Thus they virtually concede the weakness of their contention with regard to the issue of boundary.

[9] The Bundicks purchased the lower Harrison quarter league survey in 1852 and erected an inclosure containing 63 acres out of the Bowman and Reese league survey south of and adjoining the said Harrison survey, as well as a portion of the Harrison survey. We are unable to find any evidence stating the number of acres of the Harrison survey so inclosed, but find that one witness testified that the inclosure extended about 1,000 feet into said survey. The Bundicks also had, at the time of the trial, an inclosure containing 14 acres, situated about 1,000 feet south of the south boundary line of the said Harrison survey, and about a half mile west of the 63-acre parcel. It appears further that about 1882 Peter Bundick placed improvements south of the 63-acre parcel. As the 14 acres was fenced and the Peter Bundick improvements erected subsequent to the time when defendants claim their title by ten-year limitation became complete, they cannot be considered in passing upon their contention. The south line of the said Harrison survey, as claimed by the Bundicks, is located some distance south of the 63-acre tract, and no fence was placed along the same, nor was there anything to put persons upon notice that the Bundicks claimed to that line unless the erection of their improvements upon and fencing of the 63 acres above mentioned gave such notice. The Bundicks maintained the 63-acre inclosure from 1852 down to date of trial, and defendants claim that they acquired title to 640 acres out of the Bowman and Reese survey under the ten-year limitation statute of 1841, counting the time from 1852 to 1879 when the statute was changed so as to limit the amount to 160 acres. The evidence is undisputed to the effect that they never claimed that they owned any part of the Bowman and Reese league, but that their house and fences were erected thereon under the mistaken belief that the south line of the Harrison survey which they had bought was located south of their inclosure. They had actual possession of part of the Harrison survey and claimed said survey, and, of course, if they had not held a good record title to such survey, their possession of part would have enabled them to claim title by limitation therein. But they contend that the inclosure of part of the Harrison survey should be ignored, and that the possession of 63 acres out of the Bowman and Reese survey should be received as notice that they intended to claim 640 acres, including said 63 acres, but excluding the land inclosed out of the Harrison survey. No claim was made to the entire Bowman and Reese league, and no notice given that any particular part would be claimed, except that given by the existence of the inclosures. Had a fence been erected along the line claimed by defendants to be the south line of the Harrison survey, notice would have been given that the Bundicks claimed the land north of said fence, but there was nothing to show the extent of their claim, nor to show that their possession would be relied upon to claim land lying below the Harrison survey to make 640 acres instead of land within the Harrison survey to which they had a deed. In this connection, it must be borne in mind that, during the time of the possession relied upon, neither the Harrison survey nor the Bowman and Reese survey was inclosed. A large portion of the Harrison survey was inclosed in 1901 by a fence built around it by plaintiff with the consent of several members of the Bundick family. Prior to that time the Bowman and Reese survey and the Harrison survey were in a large pasture containing about 17,000 acres, which from about 1880 to 1900 was controlled by plaintiff's vendors under an arrangement by which the Bundicks and others having land in said pasture were permitted to keep their stock in the same. We conclude that the evidences of possession were not sufficient to charge the owners of the Bowman and Reese survey with notice that their land, other than that actually inclosed, was being claimed, and that therefore the court did not err in refusing to submit to the jury the question whether defendants had acquired by limitation 640 acres of the Bowman and Reese survey prior to 1879. Bracken v. Jones, 63 Tex. 184; Titel v. Garland, 99 Tex. 201, 87 S. W. 1152; Holland v. Nance, 102 Tex. 177, 114 S. W. 346;

Arnold v. Evans, 140 S. W. 497. It is true that in this case the acreage inclosed by mistake was greater than in any of the cases cited, but it constituted a very small part of the survey of which it is a part; and, there being no evidence that the evidences of ownership were of such character as to indicate an intention to hold the entire Bowman and Reese league or any portion other than the parcel inclosed, we see no good reason for applying a different rule from that announced in the cited cases.

The above conclusion makes it unnecessary to decide whether plaintiff acquired title to the land in controversy by limitation. We will say, however, that the evidence conclusively shows that plaintiff acquired title under the three and five years statutes of limitation by possession and use, beginning in 1904, to all of the land in controversy, except the 132-acre parcel. The testimony is not clear in regard to the possession and use of said 132-acre parcel.

The sixteenth assignment is overruled.

The judgment is affirmed.

### On Motion for Rehearing.

[10] Appellants contend that the evidence was of such a character that the issue of agreed boundary should have been submitted to the jury. There is absolutely no evidence that any owners of the Bowman and Reese league ever agreed with any owners of the lower Harrison quarter league survey that the line contended for by defendants was the true line. There is no evidence that representations were ever made by any owners of the Bowman and Reese survey with regard to the boundary line contended for by defendants which were acted upon by defendants in such a way as to estop plaintiff from denying the location contended for by defendants to be the correct one. The evidence at its very best (for it is indeed vague on this point) shows that A. H. Pierce upon one occasion, no effort being made to fix the time even approximately, in a conversation with Peter Bundick, recognized the line contended for by the Bundicks as the correct line, by notifying Bundick to remove improvements placed by him below the line.

The witness Harris testified that, during all the time he worked for J. E. Pierce, neither J. E. Pierce nor A. H. Pierce disputed the correctness of the Bundick land. It is impossible to tell whether he meant, by "Bundick land," the land inclosed by the Bundicks or the line to which they claimed; but, in either event, he fails to show that either of said parties was ever called upon to his knowledge to either recognize or repudiate the line.

Mrs. Clementine Bundick testified that a Mr. Hoppe ran a line below the Bundick house, and told her he was working for Pierce; that she asked him where the line was, and he said it was "down there"—she did not know how far south of the house.

[11, 12] Acquiescence, under circumstances not amounting to an estoppel, is a mere fact to be considered by the jury in determining the question of boundary. Schunior v. Russell; 83 Tex. 83, 18 S. W. 484; Camp v. League, 92 S. W. 1066; Atascosa County v. Alderman, 91 S. W. 846; Vogt v. Geyer, 48 S. W. 1100. When the location of the line is doubtful, it is entitled to great weight; but when, as in this case, the evidence leaves no room for doubt as to the true location, proof of acquiescence in the erroneous line would not support a verdict in favor thereof. So in this case no verdict for defendants could have been permitted to stand upon the vague and unsatisfactory testimony introduced in an effort to show acquiescence by the Pierces. Not only was the line contended for by plaintiffs conclusively shown to be the correct line, but the evidence of acquiescence therein and recognition thereof by the Bundicks was overwhelming. The Bundick heirs partitioned and divided the Harrison lower quarter league among themselves, exactly as same was fenced by plaintiff on the lines contended for by plaintiff. Said heirs executed leases according to said boundaries, and finally sold the land according to said boundaries. The fence built along the line contended for by plaintiff was erected by plaintiff by virtue of an agreement whereby several of the Bundick heirs bound themselves to keep up the fence. In fact, it appears that H. M. Bundick, who was absent from Matagorda county from 1887 to December, 1910, was the only one of the Bundick heirs who, prior to the institution of this suit, repudiated the line claimed by plaintiff; such repudiation being evidenced by erecting a fence about 600 varas south of the true boundary line.

Appellants contend that the inclosure of the Bundicks, in so far as it extended into the Harrison survey, was surrounded by a wire fence, and therefore this court should find that such fence was not put there until about 1880. The record is not cited in support of this assertion. There is no evidence to show that the land in the Bundick inclosure out of the Harrison survey was inclosed at a different time than that out of the Bowman and Reese survey. All the testimony tends to show that it was made at the same time. The only testimony in regard to the kind of fence around the inclosure is that of the witness Black, to the effect that when he saw the inclosure in 1902 the 63 acres around the house was inclosed by fences— "some wire and some rail fences." It could not be expected that the fences erected in 1852 would still exist in 1902.

Appellants contend that there is no possible way to reconcile the description of the land sued for in the petition and in the cross-action so as to uphold the description in the judgment. They set out at considerable

length their contention, and say that this court has permitted a judgment to stand which awards appellee a strip of land 292 varas in width by 5,250 varas in length, not described in the cross-action. Appellants again overlook the fact that they alleged specifically that the land sued for by plaintiff was a part of the land sued for in the cross-action, and that the remaining land sued for in the cross-action lies immediately west of the 577-acre tract sued for by plaintiff.

[13] The plaintiff's description calls for a certain well-described southwest corner, and the distance has to give way to the call for the well-described corner.

We deem it unnecessary to discuss the other contentions made in the motion for rehearing.

The motion is overruled.